**David Lawrence DIPO, Plaintiff and Appellant,**

**v.**

**Doris D. DIPO and George L. Dipo, Defendants and Respondents.**

**No. 13490.**

Supreme Court of Utah.

Sept. 10, 1974.

---

5. California Statutes 1967, Ch. 280, Sec. 3, p. 1438.

Joseph L. Henriod and R. Bruce Findlay, of Nielsen, Conder, Hansen & Henriod, Salt Lake City, for plaintiff-appellant.

Richard L. Bird, Jr. and Gregory L. Seal, of Richards, Bird & Kump, Salt Lake City, for defendants-respondents.

CALLISTER, Chief Justice:

Plaintiff, David Dipo, beneficiary of a trust created by his late father, A. Fred Dipo, seeks to enjoin defendant trustees, Doris (mother of David) and George Dipo (an uncle) from using a portion of the trust estate to purchase stock in certain corporations owned or controlled by Fred and his wife, Doris. The proceeds of the trust were derived from certain insurance policies purchased by Fred upon his life.

It is contended by David that the proposed purchase is not within the power of the trustees, and that, if so consummated, the trustees would so manage the property as to deprive him of income therefrom.

With regard to the case at hand, the pertinent provisions of the trust agreement are as follows:

TENTH:—Dealings with Estate of Insured—*Upon death of Grantor, the Trustees may, within their discretion, purchase assets of the estate at their fair value. The propriety of the purchase, the amount of such assets purchased, and the ascertainment of fair value shall be solely within the discretion of the Trust-* *ees, and the Trustees shall incur no liability as a result of any such purchase, whether or not the assets constitute investments which may be legally made by Trustees.*

ELEVENTH:—Trustees' Powers—In the administration of the trusts, the Trustees shall have the following powers, all of which shall be exercised in a fiduciary capacity, primarily in the interest of the beneficiaries:

(a) To hold and continue to hold as an investment the property received hereunder, including policies of insurance, and any additional property which may be received by them, so long as they shall deem proper, *and to invest and reinvest in any securities or property, whether or not income-producing deemed by them to be for the best interests of the trusts and the beneficiaries hereunder* . . ..

\*    \*    \*    \*    \*    \*

(c) To sell and convey any of the property . . . or to exchange the same for other property, for such price or prices and upon such terms as in their discretion and judgment may be deemed for the best interest of the trusts and the beneficiaries . . . ..

\*    \*    \*    \*    \*    \*

(p) The Trustees may freely act under all or any of the powers by this agreement given to them in all matters concerning the trusts herein created, after forming his judgment based upon all the circumstances of any particular situation as to the wisest and best course to pursue in the interest of the trusts and the beneficiaries hereunder, without the necessity of obtaining the consent or permission of any person interested therein, or the consent or approval of any court, *and notwithstanding that they may also be acting individually, or as trustees of other trusts, or as agents for other persons or corporations interested in the same matters, or may be interested in connection with the same matters as stockholders, directors, or otherwise,*

provided, however, that they shall exercise such powers at all times in a fiduciary capacity primarily in the interest of the beneficiaries hereunder.

The powers herein granted to the Trustees may be exercised in whole or in part, from time to time, and shall be deemed to be supplementary to and not exclusive of the general powers of trustees pursuant to law, and shall include all powers necessary to carry the same into effect. [Emphasis added.]

From the foregoing it is apparent that the settlor vested the trustees with broad discretionary powers. David contends, in effect, that these powers are statutorily unauthorized or strictly limited. He cites in support thereof Section 33–2–1, U.C.A. 1953, sometimes referred to as the "prudent man standard," which provides:

33–2–1. Judgment and care to be exercised by fiduciaries.—Retention of property properly acquired.—In acquiring, investing, reinvesting, exchanging, retaining, selling and managing property for the benefit of another, an executor, administrator, guardian, trustee, or other fiduciary shall exercise the judgment and care under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital. Within the limitations of the foregoing standard, a fiduciary is authorized to acquire and retain every kind of property real, personal or mixed, and every kind of investment, specifically including but not by way of limitation, bonds, debentures, and other corporate obligations, and stocks, preferred or common, which men of prudence, discretion and intelligence acquire or retain for their own account, and within the limitations of the foregoing standard, a fiduciary may retain property properly acquired, without limitation as to time and without regard to its suitability for original purchase.

However, the statutory section immediately following, modifies the so-called "prudent man standard" by providing:

33–2–2. Paramountcy of provisions of will, agreement, court order, or other instrument—Terms defined.—*Nothing contained in this act shall be construed as authorizing any departure from, or variation of, the express terms or limitations set forth in any will, agreement, court order or other instrument creating or defining the fiduciary's duties and powers,* but the terms "legal investment" or "authorized investment" or words of similar import, as used in any such instrument, shall be taken to mean any investment which is permitted by the terms of 33–2–1 hereof. [Emphasis added.]

Fred's estate consisted for the most part of stock in the corporations heretofore mentioned. These corporations (three in all) own improved commercial real estate which is income producing. After Fred's demise his estate was subject to inheritance taxes and was without enough cash or liquid assets to satisfy the taxes. To help alleviate the situation Doris advanced approximately $142,000 to the estate for which she received, in return, shares of stock of the corporations. It is now the intention of the trustees to use funds from the trust, in exchange for shares of stock held by the estate, to satisfy the inheritance taxes remaining due.

The trial court dismissed the complaint finding, among other facts, that the proposed purchase of assets from the estate was authorized by paragraph 10 of the trust agreement. With this finding we agree. The terms of said paragraph are clear, unambiguous and confer upon the trustees considerable discretion. The powers so conferred are much broader than Section 33–2–1, U.C.A.1953, might confer, but would appear to be statutorily authorized by Section 33–2–2, U.C.A.1953.

Furthermore, it is a generally accepted principle of law that the terms of the trust, unless illegal or against public policy, govern over such statutes as the "prudent man" statute of this State with regard to the investment of trust funds.[1] Paragraph 10 of the trust agreement specifically authorizes the trustees to purchase assets of the estate.

Plaintiff objected to the testimony of Fred's insurance advisor to the effect that one of the main purposes in purchasing the life insurance policies and creation of the trust by Fred was to enable the estate to pay inheritance taxes without the necessity of liquidating the corporations. Plaintiff's objection to this testimony was that it was *hearsay*. The court permitted the testimony subject to a motion to strike which was not made. Regardless of the question as to its admissibility[2] the trial court could have reasonably found as it did from the terms of the instrument itself.

Plaintiff complains as to the value placed upon the stock to be purchased. It is his contention that the value should be discounted because the stock of the corporations is closely held, which would impair its market value.

A certified public accountant who had done the accounting for the three corporations for many years testified as to the value of the assets. He did not take into consideration the claimed discount. He calculated values based on acquisition costs or book value, capitalized earnings, calculation of taxes on 20% of fair market value, and the appraisal by the county appraisers. The values arrived at coincided with those used when Doris made the advancement of $142,000 to the estate.

Paragraph 10 of the trust agreement provides that assets of the estate may be purchased "at their fair value" and that "ascertainment of fair value shall be solely within the discretion of the trustees." The court committed no error in adopting the value placed upon the stock by the trustees and the C.P.A.

Testimony was given and adduced by plaintiff to the effect that he and Doris were not on good terms, that she had in fact disinherited him. It is his contention that Doris and George could so manipulate the affairs of the corporations to prevent the declaration of dividends, thus depriving him of any income from the proposed transaction. This is mere conjecture. If Doris and George should so act in bad faith, David would have redress to the courts for appropriate relief.

Affirmed. Costs to respondents. ·

HENRIOD, CROCKETT, ELLETT and TUCKETT, JJ., concur.

---

1. 90 C.J.S. Trusts § 325.

2. We are of the opinion that it was. Even the parol evidence rule would probably permit such testimony. 54 Am.Jur., Trusts, Sec. 614.